# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Swift & Choi Development, LLC,     :
                Petitioner     :
                :
           v.     :     No. 1647 C.D. 2019
                :     ARGUED: November 9, 2020
Pennsylvania Public Utility Commission,     :
                Respondent     :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE ANNE E. COVEY, Judge (P)
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED: January 29, 2021**


Swift & Choi Development, LLC (S&C) petitions for review of the Pennsylvania Public Utility Commission's October 24, 2019 order denying its exceptions to the Initial Decision of Administrative Law Judge (ALJ) Angela T. Jones. ALJ Jones denied S&C's petition to intervene in proceedings concerning the application for sale of Cheltenham Township's wastewater system assets to Aqua Pennsylvania, Inc. (Aqua). S&C also appeals the Commission's November 5, 2019 order adopting the Recommended Decision of the ALJ, as modified, approving the acquisition of the wastewater system by Aqua and granting Aqua the right to supply wastewater services to the areas serviced by the system. S&C, a property owner in the Township, asks that we vacate the Commission's orders, hold that it has the right to intervene, and remand for discovery and new evidentiary hearings by the ALJ on the application for sale. Also before the Court is the joint application for summary relief of the Township and Aqua pursuant to Pennsylvania Rule of Appellate

Procedure 1532(b). We affirm the Commission's orders and dismiss the application for summary relief as moot.

Summarizing the relevant facts as found by the Commission, on March 13, 2019, Aqua filed an application with the Commission pursuant to Sections 1102(a)(1) and (3) and 1103(a) of the Public Utility Code (Code), 66 Pa.C.S. §§ 1102(a)(1) and (3) and 1103(a), requesting the approval of the sale of the system and issuance of a certificate of public convenience to begin supplying wastewater service to the areas serviced by the system. In the application, Aqua requested pursuant to Section 1329(c)(2) of the Code, 66 Pa.C.S. § 1329(c)(2), approval of a ratemaking base value of the assets to be acquired in the amount of $50,250,000. Accompanying the application were numerous exhibits purporting to comply with the requirements of the Commission's Application Filing Checklist and Section 1329(d)(1)(i)-(v) of the Code, 66 Pa.C.S. § 1329(d)(1)(i)-(v), as well as supplemental materials in support of the application in response to standard data requests.

After amendments were submitted by Aqua, the application was accepted by the Commission on May 6, 2019. This date is significant because under Section 1329(d)(2) of the Code, the Commission is required to issue a final order on the application within six months of the filing date of an application meeting applicable requirements. 66 Pa.C.S. § 1329(d)(2). Thus, a final order on the application was required by November 6, 2019.

The Commission's Bureau of Investigation and Enforcement (I&E) filed a petition to intervene and the Office of Consumer Advocate (OCA) filed a protest and a public statement. S&C, among others, filed a petition to intervene. The Township and Aqua opposed S&C's petition to intervene.

S&C's petition to intervene referenced a consent order between itself and the Township entered on October 2, 2015, by the Court of Common Pleas of Montgomery County. The consent order resulted from zoning litigation between the Township and S&C concerning development of an eight-acre parcel in the Township owned by S&C. The consent order permitted development of a 130-unit multi-family project on the property. S&C has neither developed the land nor been a wastewater customer of either the Township or Aqua.

Among other pre-hearing matters, the ALJ set a procedural schedule and, on June 13, 2019, denied S&C's motion for a 60-day extension of time to accommodate S&C's counsel's availability. At the request of the ALJ, Aqua entered as an exhibit an April 4, 2019 order of the Court of Common Pleas denying S&C's petition to enforce the consent order. (Aqua Pre-Hearing Ex. 1, Reproduced Record "R.R." at 74a.) On July 1, 2019, the ALJ issued her Initial Decision, which admitted the April 4, 2019 order of the Court of Common Pleas and denied S&C's petition to intervene. The ALJ found that S&C had failed to meet the eligibility requirements to intervene set forth in Section 5.72(a) of the Commission's regulations, 52 Pa.Code § 5.72(a). The matter proceeded to a hearing and briefing without S&C's participation, and the record closed on June 22, 2019.

S&C filed exceptions to the ALJ's Initial Decision. By order dated October 24, 2019, the Commission unanimously denied S&C's exceptions and adopted the ALJ's Initial Decision denying S&C's petition to intervene. The Commission decided that S&C had failed to show that it had a right to intervene or had an interest of such nature that intervention is necessary or appropriate to the administration of Sections 1102(a)(3) and 1329 of the Code, 66 Pa.C.S. §§ 1102(a)(3) and 1329, and under Section 5.72(a) of the Commission's regulations, 52

3

Pa. Code § 5.72(a)(1)-(3). The Commission found that S&C had not demonstrated a right conferred by statute of the United States or Pennsylvania. The Commission determined that the consent order did not constitute an enforceable local land use permit and that the development sought by S&C was speculative. Thus, the Commission determined that S&C had failed to demonstrate a direct interest in the subject matter of the proceeding. The Commission found that S&C's self-identification as a "putative" customer constituted an admission that it was not an existing customer or applicant for service and, in the absence of construction of the proposed project or at least zoning approval, S&C's claim was too speculative to support a finding of the direct interest required for intervention. Finally, the Commission found that S&C had failed to show how its interest is of such a nature that participation may be in the public interest. The Commission, noting that its jurisdiction in implementing Section 1329 of the Code was limited to determining the acquiring utility's ratemaking base value for the acquired system, did not permit it to undertake the review sought by S&C of the selling utility's use of the sale proceeds.

By separate order dated November 5, 2019, the Commission adopted the ALJ's Recommended Decision to approve the sale, subject to modifications and conditions. The Commission found that the Township's wastewater system had been beset by chronic and high inflow and infiltration and sanitary sewer overflows for the past 19 years. The Township had had several Corrective Action Plans with the Department of Environmental Protection (DEP), with the most recent approved in April 2017. Aqua was directed to adopt DEP's Corrective Action Plan and address ongoing compliance issues. As Aqua was an existing certificate holder, it was entitled to a continuing presumption regarding fitness to operate. Aqua was in

4

good standing with DEP and Commission regulations. The Commission found that based upon the record evidence, Aqua was technically, legally, and financially fit to acquire the Township's wastewater system. The Commission found that through Aqua's commitments and Commission-imposed conditions, the acquisition has an affirmative public benefit. Aqua and the Township closed the acquisition on December 5, 2019.

On appeal, S&C raises two issues: (1) whether the Commission erred in denying S&C's intervention and (2) whether the Commission erred in approving the sale of the Township's sewer system to Aqua and granting a certificate of public convenience. It is noted that the second issue has not been developed in S&C's brief.[1]

S&C argues that it was entitled to intervene under Section 5.72 of the Commission's regulations, 52 Pa. Code § 5.72. In furtherance of this issue, S&C raises five enumerated arguments: (1) that intervention should be liberally permitted; (2) that the Commission applied an erroneous intervention standard; (3) that S&C has an interest which may be directly affected and which is not represented by existing participants; (4) that a "putative customer" in a transfer of service case possesses a substantial interest; and (5) that intervention by S&C is in the public interest.

Section 5.72(a) of the Commission's regulations provides, in relevant part, as follows:

> (a) *Persons*. A petition to intervene may be filed by a
> person claiming a right to intervene or an interest of such

---

[1] Issues raised in a litigant's statement of issues but not otherwise developed in the argument portion of its brief are waived. *Singer v. Bureau of Pro. & Occupational Affairs, State Bd. of Psych.*, 633 A.2d 246, 247 (Pa. Cmwlth. 1993).

nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:

> (1) A right conferred by statute of the United States or of the Commonwealth.
>
> (2) An interest which may be directly affected and which is not adequately represented by existing participants, and as to which the petitioner may be bound by the action of the Commission in the proceeding.
>
> (3) Another interest of such nature that participation of the petitioner may be in the public interest.

52 Pa. Code § 5.72(a). This Court reviews denial of intervention by the Commission for abuse of discretion. *W. Penn Power Co. v. Pa. Pub. Util. Comm'n*, 659 A.2d 1055, 1065 (Pa. Cmwlth. 1995). Abuse of discretion occurs only "where the law is overridden or misapplied, or the judgment exercised is clearly unreasonable, or the result of partiality, prejudice, bias or ill-will as shown by the evidence or the record." *Lyft, Inc. v. Pa. Pub. Util. Comm'n*, 145 A.3d 1235, 1247 (Pa. Cmwlth. 2016).

We first address[2] S&C's argument that the Commission applied an erroneous standard to its claim that it had standing as a putative customer, to wit:

---

[2] S&C's first argument is to the effect that intervention should be liberally permitted, citing no authority. Despite her agreement with this proposition, the ALJ denied intervention. We note that our own review of the Commission's regulations reveals:

> This subpart [Title 52 of the Pennsylvania Code] shall be liberally construed *to secure the just, speedy and inexpensive determination of every action or proceeding to which it is applicable . . . .*

52 Pa. Code § 1.2(a) (relating to liberal construction) (emphasis added). By this standard of construction, we do not believe that the Commission erred in its construction of its regulation at Section 5.72(a), 52 Pa. Code § 5.72(a). In this matter, a speedy resolution (i.e., a final order within **(Footnote continued on next page…)**

6

"the person or entity has a direct, immediate[,] and substantial interest in the subject matter of the proceeding," and that the Commission's discretionary authority may be overturned only where it is manifestly unreasonable. (Comm'n Oct. 24, 2019, Op. and Order at 10-11, R.R. at 10a-11a.) In so arguing, S&C cites our decision in *Sunoco Pipeline L.P. v. Dinniman*, 217 A.3d 1283 (Pa. Cmwlth. 2019), for the proposition that "the 'direct, immediate and substantial interest' test is applicable only to the standing of a person initiating a complaint before the Commission, not to an intervenor in an ongoing proceeding." (S&C Br. at 13.) S&C quotes this Court's statement in *Sunoco* as follows:

> Standing to file a formal complaint requires the moving party to have a direct, immediate, and substantial interest in the subject matter of the controversy. Conversely, a person seeking to intervene in a proceeding need have only an "interest of such nature that participation . . . may be in the public interest." 52 Pa. Code § 5.72(a)(3). The grant of intervention to a party is not "recognition by the Commission that the intervenor has a *direct interest in the proceeding* or might be aggrieved by an order of the Commission in the proceeding," only that the intervenor's participation will advance the public interest. 52 Pa. Code § 5.75(c).

*Sunoco*, 217 A.3d at 1288-1289 [quoting *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 280 (Pa. 1975) (plurality)] (citation omitted; emphasis added by *Sunoco* Court).

We find S&C's reliance on *Sunoco* is misplaced. In the first place, the Court in *Sunoco* did not purport to examine the eligibility standards for intervention set forth in Section 5.72(a), 52 Pa. Code § 5.72(a), but held only that Section

---

six months from the application) was also statutorily mandated by Section 1329 of the Code. *See* 66 Pa.C.S. § 1329(d)(2).

5.72(a)(3) was not applicable to the standing requirements for filing a complaint. More significant to the claim presented here by S&C, while the Commission makes a passing reference to the *William Penn Parking Garage* test (direct, immediate and substantial interest) in its general discussion of the law regarding standing, it did not *apply* this standard in its analysis of S&C's right to intervene. Rather, it analyzed S&C's eligibility to intervene under the standards of Section 5.72(a) set forth above, as had the ALJ, whose decision the Commission adopted.

With respect to Section 5.72(a)(1), S&C has not asserted in its brief to this Court that it has a right conferred by a state or federal statute, so we will not address that standard further.[3]  Regarding the other eligibility standards set forth in

_____

[3] Regarding this standard the Commission opined:

> S&C stated that it has a right which originated in the Consent Order dated October 2, 2015, which S&C opined was not fulfilled because the Township allegedly violated Act 537, [Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§ 750.1-750.20a], a Commonwealth of Pennsylvania statute. 6 I.D. at 10 (citing S&C Petition at 2, In 2, 3(b)). However, the ALJ explained that Act 537 does not provide an enforceable right to a land developer or landowner such as S&C. Rather, Act 537 provides the process and procedure, subject to DEP oversight, for municipalities to develop and implement comprehensive official sewage plans ….

Op., October 24, 2019, at p.19. Further:

> S&C is a real estate developer with property in Cheltenham Township. It appears to be involved in a long-running, local land use dispute with the Township concerning wastewater service to its development property. Recently, on April 4, 2019, the Montgomery County Court of Common Pleas denied a petition of S&C seeking that Court's enforcement of an October 2, 2015 Consent Order …. In our opinion, the ALJ correctly concluded that, without an enforceable local land use permit to develop the land, we must deem

**(Footnote continued on next page…)**

8

Section 5.72(a), S&C first argues that it had an interest which may be directly affected and which is not adequately represented by other parties, as required for intervention under Section 5.72(a)(2). As support, S&C points to the consent order entered by the Court of Common Pleas approving an agreement between S&C and the Board of Commissioners of Cheltenham Township permitting the development of the property by S&C under the then-existing M2-Multiple Dwelling District.[4] (R.R. at 58a-63a.) Subsequently, ruling on S&C's petition to enforce the consent order, the Court of Common Pleas entered an order without opinion, dated April 4, 2019, denying enforcement. Although the parties differ on the underlying reasons for the order, which was not explained and was not appealed, the Court of Common Pleas' refusal to enforce the consent order is final and binding upon the parties. Because S&C's right to develop the property is no longer clear, we do not discern an abuse of discretion by the Commission in its determination that S&C's interest was too speculative to meet the requirement of an interest "directly affected," as required by Section 5.72(a)(2).

S&C makes other contentions in support of its argument regarding its interest as a putative customer—that the agreement between the Township and Aqua had a schedule listing its proposed project as a "pending development project" (*see*

---

the development speculative for purposes of our analysis here ….
Thus, we affirm the ALJ's conclusion that S&C does not have a right conferred to it by Commonwealth statute, Act 537 or otherwise, to warrant its intervention in this proceeding pursuant to 52 Pa. Code § 5.72(a)(1).

Op., October 24, 2019, at pp.43-44. We agree.

[4] According to the briefs of intervenors the Township and Aqua, the zoning has changed and the "permit" (i.e., the consent order) expired after two years pursuant to the local zoning ordinance.

9

R.R. at 35a); that S&C was disadvantaged by the transfer of the Township's wastewater assets to an entity (Aqua) not covered, as the Township is, by the Pennsylvania Sewage Facilities Act (Act 537); and that Aqua may be unable or unwilling to provide wastewater services to the property. However, these arguments, to the extent they might have merit, are dependent upon S&C's having a direct interest in the first place. As noted above, it does not have such interest, and its arguments are speculative both as to whether S&C will ever perfect a right to develop the property and whether Aqua may not provide service.[5] Therefore, we do not find that the Commission abused its discretion in finding that S&C had not provided sufficient evidence of an interest which may be directly affected.

Finally, S&C argues that it is in the public interest that it be permitted to intervene, claiming to have raised numerous questions as to whether the sale of the wastewater system was in the public interest. S&C claims that it would have challenged the evidence presented to the Commission and demonstrated that the sale was not in the public interest. S&C specifically mentions its interest as a taxpayer and its interest as a putative user. S&C questions the valuation and the effect it will have on the rate base for future billing. S&C further claims that the overvaluation of the wastewater assets will create a public slush fund which the Commissioners might use for corrupt purposes.

We note first that the public interest was actively represented in this matter by the OCA and I&E, which did intervene before the Commission and actively represented the public interest, as reflected in the Commission's downward

---

[5] The Commission noted that should those possibilities occur, S&C would have an administrative remedy of filing a formal complaint against Aqua with the Commission and that after the sale, Aqua would have an obligation to provide service to applicants who met the requirements of its tariff.

adjustment of the valuation of the wastewater system and imposition of conditions by which Aqua must abide. Thus, whatever interest S&C might have as a potential future user of the system was represented by other entities. Moreover, Section 5.72(a)(3) of the regulations permits intervention in furtherance of the public interest only for a party holding "an interest of such nature that intervention is necessary or appropriate to the *administration of the statute under which the proceeding is brought*." We agree with the Commission that S&C's other allegations concerning the public interest, and any proof that might be brought to support them, go beyond the Commission's jurisdiction under the procedural and substantive provisions cited by S&C: Section 1102(a)(1) and (3) of the Code, 66 Pa.C.S. § 1102(a)(1) and (3);[6] Section 1103(a) of the Code, 66 Pa.C.S. § 1103(a);[7] and Section 1329 of the Code, 66 Pa.C.S. § 1329 (relating to valuation of acquired water and wastewater systems). Those provisions, although requiring a finding or determination that the "granting of such certificate is necessary or proper for the service, accommodation, convenience, or safety of the public," 66 Pa.C.S. § 1103(a), do not provide for an inquiry into tax effects of its decision or on the wisdom of the uses to which a municipality may put the proceeds of a sale.[8] We find that the Commission did not abuse its discretion in denying S&C intervention under Section 5.72(a)(3) of the

___

[6] Section 1102(a)(1) provides for issuance of certificates of public convenience for provision of service and Section 1102(a)(3) provides for acquisitions and transfers of public utilities. 66 Pa.C.S. § 1102(a)(1), (3).

[7] Section 1103(a) generally provides the requirements and procedures for an application for a certificate of public convenience. 66 Pa.C.S. § 1103(a).

[8] For its part, the Commission has found that the sale of the Township's wastewater assets to Aqua is in the public interest, furthering the policies of regionalization and consolidation, with attendant benefits. Any issues S&C might have with the providence of such policies, or the requirement that the Commission issue a final order within six months of application, are properly addressed to the General Assembly.

regulations, as it is not clear that S&C's participation was necessary or appropriate for the administration of the statutes at issue.

Finally, S&C does not address the second question listed in its brief—whether the Commission's order permitting the sale should be reversed. This issue need not be addressed. First, in light of our finding that the Commission did not abuse its discretion in denying intervention to S&C, it lacks standing to make arguments on the merits. Second, S&C failed to brief the issue at all, and it is not the role of this Court to make arguments when a party fails to do so.

In light of the foregoing, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

Judge Fizzano Cannon and Judge Crompton did not participate in the decision for this case.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Swift & Choi Development, LLC, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1647 C.D. 2019 |
| | : | |
| Pennsylvania Public Utility Commission, | : | |
| Respondent | : | |

# O R D E R

AND NOW, this 29th day of January, 2021, the October 24, 2019 and November 5, 2019 Orders of the Pennsylvania Public Utility Commission in the above-captioned case are AFFIRMED. The Application for Summary Relief of Intervenors Cheltenham Township and Aqua Pennsylvania Wastewater, Inc., is DISMISSED as moot.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge